**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bert Martinez,<br><br>            Plaintiff,<br><br>v.<br><br>Beatrice Lynn Duarte, et al.,<br><br>           Defendants. | No. CV-25-00130-PHX-DJH<br><br>**ORDER** |

Before the Court are two Motions to Dismiss. (Docs. 39 & 49). The first is brought by Defendant Beautrice Lynn Duarte ("Duarte") and her husband (collectively the "Duartes") (Doc. 39) and the second is brought by Defendant Kaiser Foundation Health Plan Incorporated ("Kaiser") (Doc. 49). *Pro se* Plaintiff Bert Martinez ("Martinez") has filed his Opposition to both Motions and both Duarte and Kaiser have filed a Reply. (Docs. 41, 51, 45 & 52). For the reasons set forth below, the Court will grant both Motions to Dismiss and dismiss this action.

**I.     Background**

Duarte was in El Salvador when tragedy struck. (Doc. 38 at 4). She suffered a medical emergency and had to be transported by helicopter back to her home in Los Angeles. (*Id.*). At the time, Duarte was insured by Kaiser. (*Id.* at 5). She was helicoptered out of El Salvador by a company called Air Ambulance. (*Id.* at 6). Somewhere in that chronology, Duarte's husband[1] signed a contract with Air Ambulance to fly her to a

---

[1] Martinez attached an alleged contract for services with Air Ambulance and signed by Duarte's husband to his Second Amended Complaint ("SAC"). (Doc. 38 at 11).

hospital near her home. Because she was insured, Air Ambulance billed Kaiser in the amount of $729,030.00. (*Id*. at 7). Kaiser paid only $94,852.69 out of that amount. (*Id.*) Martinez states that he was assigned Air Ambulance's rights as to the rest of the money. (*Id.* at 11). In his SAC he brings the following claims against Duarte, her husband, and Kaiser: (1) breach of contract; (2) breach of fiduciary duty; and (3) request for appointment of arbitrator. (*Id*. at 4–6).

## II.     Legal Standard

A successful motion to dismiss under Rule 12(b)(6) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In ruling on a 12(b)(6) motion, the Court takes the plaintiff's well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to a presumption of truth and are not sufficient to defeat a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. A complaint does not need to have detailed factual allegations, but it must have more than a "the-defendant-unlawfully-harmed-me accusation." *Id.*

## III.    Discussion

The Court finds that Martinez's breach of contract claim against Duarte and her

husband cannot go forward because the No Surprises Act ("NSA") precludes enforcement of Martinez's contract. Moreover, his claim for the Court to appoint an arbitrator under the NSA is not legally cognizable. As for the claims against Kaiser, the Court finds that it does not have either general or specific jurisdiction over the company. Therefore, the Court will grant the Duartes' and Kaiser's Motions to Dismiss.

### A. Duarte's Motion to Dismiss

Duarte attacks the sufficiency of Martinez's breach of contract claim against her and husband by stating that the NSA preempts the state law breach of contract claim. (Doc. 39 at 3). She argues that the NSA was passed to prohibit the kind of conduct that the contract seeks to enforce, i.e., those that require Duarte to pay the difference between the amount Martinez billed Kaiser and the amount Kaiser paid Martinez. (Doc. 39 at 4–5). In response, Martinez states that a valid contract exists between the parties, predicated on "informed consent or contractual obligation." (Doc. 41 at 3). As an aside, he argues that at this point in the litigation the Court should not decide the issue. (*Id.*)

#### 1. Contracts for Balance Billing and the NSA

Congress passed the NSA to protect patients from surprise medical bills in situations where they have no choice over whether their provider is in-network. *See* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182, 2758–890 (2020). Especially important to Congress when it passed the NSA was the elimination of surprise balance billing. *Id.* Before the Act's passage, when an out of network healthcare provider proffered medical care to a patient, the patient's insurance company could simply refuse to pay the bill or decide what amount to pay and leave the patient holding the bag for the rest. *Id.*

Three types of situations can make it so that a patient does not have a choice who her provider is: (1) when the insured receives emergency care from an out-of-network provider, *see* 42 U.S.C. § 300gg–131; (2) when the insured receives non-emergency medical services at an in-network facility but the services themselves are provided by an out of network provider, *see id.* § 300gg–132; and (3) when the insured is transported by

an out-of-network air-ambulance provider, *see id.* § 300gg–135. In these three situations, the NSA caps the insured's share of liability to out-of-network providers at an amount comparable to what the insured would have owed had she received care from an in-network provider. This is called the qualifying payment amount ("QPA"). *See* 42 U.S.C. § 300gg–111(a)(3)(E)(i) (setting rates to determine liability for both the patient and the insurer, otherwise called the qualifying payment amount).

The QPA is important for the insured, the insurer, and the provider. The insured would be billed as if the out-of-network provider were in network, meaning that the insured would not have to cover any costs greater than the QPA. *Id.* § 300gg-111(a)(1)(C)(ii)–(iii), (3)(H)(ii), (b)(1)(A)–(B). This process is the same for air-ambulance providers. *See* 42 U.S.C. § 300gg-112. The insured does not have to pay more than the QPA to an out-of-network air ambulance provider. *Id.* If an out-of-network service provider is unhappy with the QPA they have received from the insurer, the statute provides a means for them to seek more compensation. After a provider submits a bill for an out-of-network service, the insurer has thirty days to respond by either issuing some type of payment, or by providing a notice denying payment. Whichever response may follow, if the provider does not like the insurer's response, the provider can then open up an initial period of negotiation for thirty days. § 300gg-111(a)(1)(C)(iv), (b)(1)(C), (c)(1)(A). If contentions remain between the provider and the insurer, both parties can then seek independent dispute resolution ("IDR") where an arbitrator will determine how much the insurer must pay the provider. § 300gg-111(c)(1)(B), (4)(A). The arbitrator's decision is binding on both parties and not subject to judicial review except under the circumstances described in the Federal Arbitration Act. §§ 300gg-111(c)(5)(E)(i), 300gg-112(b)(5)(D). The final amount is offset by the patient's cost-sharing obligation and any amounts already paid by the insurer. § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D).

The present situation falls squarely within the protections against balance billing codified in the NSA. The SAC alleges that Duarte is insured by Kaiser and that Air

Ambulance[2] provided Duarte out-of-network services when Duarte suddenly fell ill in El Salvador and needed to be helicoptered out of the country. Kaiser, as Duarte's insurer, paid Air Ambulance $94,852.69 for the cost of transporting Duarte out of El Salvador and to safety. Unhappy with the amount paid by Kaiser, Martinez now seeks to obtain the balance from Duarte and her husband. The NSA was passed to prevent exactly this type of situation.

The contract Martinez references[3] has a clause called "Guarantee of Payment & Assignment of Benefits." (Doc. 38 at 11, Ex. 3). The clause states the following: "I agree to pay AIR AMBULANCE 911's charges for the Services, including but not limited to any co-payments, deductibles or other **expenses not covered by insurance."** (*Id.* (emphasis added)). But that is exactly the type of conduct the NSA prohibits. *See* 42 U.S.C. § 300gg-112 (stating that the insured does not have to pay more than the QPA for an out-of-network air ambulance provider). Making the insured pay the difference between what is owed and what insurance has paid is balance billing and prohibited by statutory mandate under the NSA. (*Id.*) "[A] contract which violates or contravenes a federal or state constitution, statute, or regulation is illegal, invalid, unenforceable, and void." 17A Am. Jur. 2d *Contracts* § 229 (2008) (footnotes omitted). Therefore, setting aside the preemption issue raised by the Duartes,[4] the Court finds that Martinez has not stated enough facts or a legally cognizable theory for the Court to find that he has pleaded a viable breach of contract action

---

[2] The SAC alleges that Martinez is the assignee of Air Ambulances' rights.

[3] The contract was signed by Duarte's husband, not Duarte herself (presumably because Duarte was incapacitated). Any issues surrounding this discrepancy are not fully briefed by the parties but need not be addressed as the Martinez seeks to enforce the agreement solely to collect on the unpaid balance, which is prohibited by the NSA.

[4] Congress has only entirely preempted state law in three instances: (1) Section 301 of the Labor Management Relations Act; (2) Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974; and (3) Sections 85 and 86 of the National Bank Act. *Sullivan v. American Airlines,* 424 F.3d 267 (2d Cir.2005) (interpreting the Supreme Court of the United States decision in *Beneficial National Bank v. Anderson,* 539 U.S. 1, (2003)); *see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (adopting this reasoning and holding the same). The Court will not task itself to say that all state law breach of contracts claims are forever preempted by the NSA at this time.

against Duarte and her husband. *See Smilecare Dental Group v. Delta Dental Plan,* 88 F.3d 780, 783 (9th Cir. 1996) (stating that the Court may dismiss a claim when it is not based on a cognizable legal theory). Additionally, because the breach of contract claim is not legally cognizable, the Court finds that leave to amend as to the breach of contract would be futile. S*ee Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (stating that futility is good reason to deny leave to amend).

### 2. Martinez's Request for Appointment of Arbitrator under the NSA

Martinez's SAC asked the Court to compel the parties to arbitration and appoint an arbitrator to resolve this dispute. (Doc. 38 ¶¶ 27–29). Duarte points out that the NSA does not allow for such relief. (Doc. 39 at 9). The Court is inclined to agree.

The NSA provides a mechanism and an established procedure for arbitrating such claims. *See* 42 U.S.C. § 300gg-112. Martinez acknowledges the existence of "federally mandated Independent Dispute Resolution (IDR) process under the No Suprises Act (NSA)" and ask "that the Court acknowledge the applicability of the NSA and comple the parties to participate in the IDR process." (Doc. 38 at ¶¶ 3, 29). He says "Kaiser failed to respond and would not participate in the NSA's IDR process." (*Id.* at ¶ 8). Notably, however, the statute does not require Duarte, the insured, to participate in the IDR process. *See* 42 U.S.C. § 300gg-112 (stating who may participate in the IDR process, leaving out the insured). Indeed, Martinez seems to acknowledge as much. *See e.g.*, Doc. 38 ¶ 27 ("The NSA establishes a mandatory Independent Dispute Resolution process for payment disputes **between out-of-network providers and insurers."**) (emphasis added); (Doc. 38 at ¶ 28) ("The QPA (Qualifying Payment Amount) mechanism is central to determining fair payment for ALL parties."). Duarte is neither an out-of-network provider or insurer. Under these circumstances, the Court finds that Martinez has not stated a legally cognizable claim to force either Duarte and her husband to engage in the IDR process with him. *See Smilecare Dental Group*, 88 F.3d at 783. Because this claim, like the breach of contract claim against Duarte, is also not legally cognizable, the Court finds that leave to amend should not be granted because it would be futile. *Carrico v. City and Cty. of San Francisco*,

656 F.3d 1002, 1008 (9th Cir. 2011).

### B. Kaiser's Motion to Dismiss

Kaiser argues that the Court has neither general nor specific personal jurisdiction over Kaiser. (Doc. 49 at 5–6). Martinez says that Kaiser is subject to both. (Doc. 51 at 3). The Court agreed with Kaiser.

A plaintiff always has the burden to establish that proper personal jurisdiction exists when opposing a motion to dismiss. *Marvix Photo, Inc. c. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). However, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where. . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Id.* (referencing Fed. R. Civ. P. 4(k)(1)(A)).

Arizona's long arm statute is co-extensive with federal due process requirements; therefore, a personal jurisdictional analysis under Arizona law is the same as a federal analysis. *Atkins v. Calypso Systems, Inc.*, 2015 WL 5856881 at *2 (D. Ariz. Oct. 8, 2015). Under the Due Process Clause, "[a]lthough a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts. . . . such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). A court may assert general or specific personal jurisdiction over a nonresident defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).

#### 1. General Personal Jurisdiction

To provide support that it is not subject to the Court's general jurisdiction, Kaiser states that it is incorporated and has its principal place of business in California. (Doc. 49 at 5). Martinez argues that Kaiser is registered to do business in Arizona, thereby supporting a finding that Kaiser is subject to general personal jurisdiction. (Doc. 51 at 3).

General jurisdiction exists when the nonresident defendant maintains "continuous

and systematic" contacts with the forum state, so much as to render the nonresident "at home." *Id.* at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Ninth Circuit will evaluate a defendant's minimum contacts based on the contacts' "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the [forum] state's regulatory or economic markets." *Gonzalez v. United Seating and Mobility LLC*, 2024 WL 3226550, at *2 (D. Ariz. Jun. 28, 2024) (citing *Mavrix Photo, Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011)).

The Court finds that it does not have general personal jurisdiction over Kaiser. Kaiser is incorporated under the laws of California. (Doc. 49 at 5–6). Likewise, its principal place of business is in California where it is headquartered and from where its officers and directors manage its operations. (*Id.* at 5). According to Kaiser, it does not "advertise, deliver, manage, or operate health plans in Arizona." (Doc. 49 at 7). Additionally, Kaiser "does not own property, lease property, have an office, maintain records, or advertise or solicit business in Arizona." (*Id.*) Martinez meanwhile maintains that Kaiser is registered to do business in Arizona. (Doc. 51 at 3). But that alone cannot confer the Court with general personal jurisdiction over Kaiser. *See Pac. Sci. Energetic Materials Co. (Arizona) LLC v. Ensign-Bickford Aerospace & Def. Co.*, 2011 WL 4434039, at *5, fn. 4 (D. Ariz. Sept. 23, 2011) (stating that merely registering to do business in Arizona does not confer general jurisdiction based on this Arizona case: *Armstrong v. Aramco Services Co.,* 746 P.2d 917, 924 (Ariz. Ct. App. 1987); *see also McCard v. Circor Int'l, Inc.*, 2021 WL 1212745, at *4 (E.D. Cal. Mar. 31, 2021) (same); *see also Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015) (same). Therefore, the Court finds that it does not have general personal jurisdiction over Kaiser.

**2. Specific Personal Jurisdiction**

Kaiser also argues that the Court does not have specific personal jurisdiction over it. Kaiser argues that it did not purposefully avail itself of the privilege of doing business in Arizona, nor does the conduct alleged by Martinez arise out of or relate to the forum in any way. (Doc. 49 at 6–8). To counter, Martinez contends that by paying Duarte's

insurance claim to Air Ambulance, an Arizona corporation, Kaiser has subjected itself to specific personal jurisdiction. (Doc. 51 at 2).

Specific jurisdiction may be asserted against a nonresident defendant if the controversy arises from or is related to the defendant's specific contact with the forum state. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984). The Ninth Circuit follows a three-prong test for analyzing whether specific jurisdiction has been established:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play or substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. A plaintiff bears the burden of satisfying the first two prongs of the test. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). If the plaintiff satisfies the first two prongs, the burden then shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 476–78. The "purposefully availment" requirement in the first prong ensures that a defendant will not be hauled into a jurisdiction solely because of "'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 475.

At the Motion to Dismiss stage, the burden is on Martinez, at least on the first two prongs to establish specific personal jurisdiction. *Burger King Corp*, 471 U.S. at 475. Martinez argues that by paying a claim to Air Ambulance, an Arizona company, Kaiser purposefully directed its activities towards Arizona. (Doc. 51 at 2). Payment of the claim, Martinez alleges, is conduct that arises out of or gives rise to Kaiser's forum-related activities. (*Id.*) The Court disagrees. The conduct Martinez references occurred entirely in El Salvador (where Duarte suffered her medical emergency) between Air Ambulance and two California residents (Duarte and her husband). And although Martinez received payment from Kaiser, a California corporation, that is not sufficient for the Court to find

that it purposefully directed its acts to Arizona.  *See Thuney v. Lawyer's Title of Arizona*, 2019 WL 467697, at *6 (D. Ariz. Feb. 6, 2019), *judgment entered sub nom. Thuney v. Lawyer's Title of Arizona Inc.*, 2019 WL 13197981 (D. Ariz. Apr. 5, 2019) (stating that money transfers are normally not a sufficient basis for a federal court to exercise specific jurisdiction, especially when the transfer is done at the plaintiff's request). Therefore, the Court finds that it lacks specific jurisdiction over Kaiser.

Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Here, there are no facts consistent with the alleged unpaid balance that would give the Court jurisdiction over Kaiser.  Thus, any amendment to Martinez's SAC would be futile and amendment is therefore properly denied.  *Carrico*, 656 F.3d at 1008.

### IV. Count Two: Violation of Duty

In his SAC, Martinez alleges Kaiser violated "Arizona fiduciary principles and the No Suprises Act, 42 U.S.C. § 300gg–111(c)" when it failed "to act in good faith and deal fairly when processing claims" and "failed to timely respond to billing and failed to initiate or participate in the federally required IDR process." (Doc. 38 at ¶¶ 23–26).  Because the Court lacks jurisdiction over Kaiser, this claim will also be dismissed.

### V. Attorney Fees

Duarte requests her attorneys' fees under A.R.S § 12-341.01(A) in her Motion to Dismiss. (Doc. 39 at 10).  The statute specifically provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable fees." Ariz. Rev. Stat. § 12–341.01(A).  "The proper inquiry for determining whether a claim "arise[s] out of a contract" is whether the claim could not exist 'but for' the breach or avoidance of contract. *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 974 (9th Cir. 2011) (internal quotation marks omitted).  The current action arose out of a contract dispute.  Martinez brought this case because of a contract signed between Air Ambulance and Duarte's husband and Martinez alleged a breach of contract claim.

(Doc. 38 at 4). Martinez's only response to Duarte's request for fees is that he believes they are premature at this stage. (Doc. 41 at 5). Though determining reasonableness of the fees may be premature, determining Duarte's entitlement to fees is not. The Court finds that Duarte is entitled to attorneys fees under A.R.S. § 12–341.01(A).

Accordingly,

**IT IS ORDERED** that Defendant Beautrice Lynn Duarte's Motion to Dismiss (Doc. 39) for failure to state a claim is **granted** and Plaintiff Bert Martinez's Second Amended Complaint as to Defendant Beautrice Lynn Duarte is **dismissed, with prejudice.**

**IT IS FURTHER ORDERED** that Defendant Kaiser Foundation Health Plan Incorporated's Motion to Dismiss (Doc. 49) for lack of jurisdiction is **granted** and Plaintiff Bert Martinez's Second Amended Complaint against Defendant Kaiser Foundation Health Plan Incorporated is **dismissed, with prejudice.**

**IT IS FURTHER ORDERED** the Clerk of Court is directed to enter judgment accordingly and close this matter.

**IT IS FINALLY ORDERED** that Beautrice Lynn Duarte may file a motion for costs and attorneys' fees in accordance with Local Rule of Civil Procedure 54.2 within fourteen (14) days of the entry of this Order.

Dated this 10th day of February, 2026.

Honorable Diane J. Humetewa
United States District Judge